UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANDREW SIMINAUSKY,                  :
     Plaintiff,                          :
                           :
     v.                                 :     CASE NO. 3:15-cv-159 (VLB)
                           :
JANE STARKOWSKI, et al.,            :
     Defendants.                        :

**INITIAL REVIEW ORDER**

The plaintiff, Andrew Siminausky, currently incarcerated at the Cheshire Correctional Institution in Cheshire, Connecticut, has filed a complaint pro se under 42 U.S.C. § 1983 (2000).  The complaint was filed on February 4, 2015, and the plaintiff's motion to proceed in forma pauperis was granted on March 5, 2015. The plaintiff names twenty-three defendants:  Jane Starkowski,  Correctional Managed Health Care Providers, Nurse Francis, Dr. Monica Farinella, Dr. Omprakash Pillai, Supervisor E. Dolan, Health Services Administrator Lightner, Nurse Joy Burns, Nurse Tim Granahan, Podiatrist Henry Fedus, Supervisor Patti Wollenhaup, Dr. Michael Clements, Correctional Officer Turner, Correctional Officer Peters, Addiction Services Counselor Willie McCreary, Correctional Officer Alxander, Acting Warden Barone, Captain Hall, Warden Chapdelaine, District Administrator Quiros, Warden John Tarascio, and Warden Peter Murphy. The plaintiff asserts claims for violations of his constitutional rights, as well as the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or

malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  But "'[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Boykin v. KeyCorp., 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

I.    Allegations

     The allegations in the complaint span the period from February 2012, through December 2014 and are not presented in chronological order.  The defendants are from four different correctional facilities:  MacDougall-Walker Correctional Institution, Corrigan Correctional Institution, Osborn Correctional Institution and Willard Cybulski Correctional Institution.

     The plaintiff suffers from Raynaud's Phenomenon, a circulatory disease

that results in diminished blood flow to the extremities.  The condition causes the plaintiff to suffer severe pain in his hands and feet and prevents him from participating in programs or activities in cold, damp and rainy climates or air-conditioned facilities.

The plaintiff alleges the following facts.

On February 6, 2012, the plaintiff filed an administrative remedy. The plaintiff alleges that defendant Francis "checked off the exhaustion of remedies box" thereby denying him a right of appeal, but the attached document does not support this allegation.  On February 8, 2012, the plaintiff filed a second medical grievance which defendant Francis failed to answer.  This grievance stated that the plaintiff lost blood circulation in his extremities during outdoor recreation in 30 degree weather.

On February 14, 2012, the plaintiff saw Dr. Pillai.  The plaintiff complained about the lack of medical items he was provided to protect his extremities.  Dr. Pillai agreed to look into the matter but would not record the plaintiff's complaints in his medical records.  Dr. Pillai conditioned his medical order for soft restraints on approval by custody staff.

In March 2012, private attorney Jane Starkowski sent the plaintiff a letter in which she stated that custodial staff had approved use of soft restraints to address the plaintiff's condition.

On March 14, 2012, the plaintiff was transferred from MacDougall-Walker Correctional Institution to Corrigan Correctional Institution.  He was placed in

3

metal restraints and, allegedly to cover-up staff misconduct, defendant Farinella discontinued the soft-restraint order without examining the plaintiff.  On March 27, 2012, the plaintiff was visited by an attorney retained by his family.  Following the visit, the plaintiff was transferred.  Many of the plaintiff's documents were stolen when officers packed up his property for the transfer.

In April 2012, defendant Turner searched the plaintiff's cell and confiscated the plaintiff's gloves.  Defendant Turner stated that they were work gloves and the plaintiff did not have a prison job.  Defendant Turner refused to review the plaintiff's property matrix which referenced medically-issued gloves.  The plaintiff complained to the warden who referred the request to the medical department.  The medical staff stated that there was no glove order.  After a visit with his attorney, the plaintiff was issued black cotton gloves by the medical department.

The plaintiff returned to MacDougall-Walker Correctional Institution on April 27, 2012.  Upon his arrival, defendant Peters confiscated the black gloves.  The plaintiff sent a request to defendant Warden Murphy seeking return of the gloves.  The unit manager called the plaintiff to his office and told him that Warden Murphy stated he could have the black gloves.  The plaintiff also requested the white gloves that previously had been confiscated.  Ultimately, the plaintiff received the white gloves and learned that the black gloves had been discarded.

On May 14, 2012, the plaintiff filed a medical remedy in response to Dr. Farinella discontinuing the soft-restraint order.  Defendant Burns responded that

4

the soft-restraint order had been renewed in February 2012 and that the plaintiff should address these issues with the medical department rather than by grievance.  She failed to address the recent discontinuance of the order.  The plaintiff raised the issue at sick call but a soft-restraint order was not added to his medical chart.  The plaintiff also was denied a bucket in which to soak his feet. The plaintiff then filed another medical grievance.  Defendant Burns stated that the plaintiff would be scheduled to see a doctor.

On November 21, 2012, the plaintiff was transferred to Osborn Correctional Institution.  Defendant Granahan failed to ask the plaintiff if he needed any reasonable accommodations during medical orientation or advise the plaintiff of his rights under the ADA.  When the plaintiff asked for ADA forms, defendant Granahan stated that the plaintiff would see a doctor the following day.  There was a six-month wait to see a doctor.

In December 2012, defendant McCreary denied the plaintiff access to an anger management program that plaintiff contends was required for parole eligibility, because the plaintiff was wearing his gloves.

In August 2013, the plaintiff refused a transfer to an air-conditioned facility. Defendant Alxander placed the plaintiff in handcuffs and escorted him to restrictive housing.  During the escort, defendant Alexander tried to make the plaintiff fall.  After placing the plaintiff in his cell, defendant Alexander pulled the plaintiff's hands through the food trap causing pain in the plaintiff's neck and shoulders.  The medical department did not deem this an emergency and did not

5

immediately provide pain medication.

On an unspecified date, the plaintiff was transferred back to MacDougall-Walker Correctional Institution.  In September 2013, the plaintiff submitted a request to Warden Murphy regarding his pain.  Defendant Acting Warden Barone responded to the request but did not respond to a follow-up request regarding all of the plaintiff's medical concerns.  The plaintiff received no response to a September 2013 medical request regarding treatment for Raynaud's Phenomenon or to September 2013 requests to the ADA coordinator.

On March 31, 2014, the plaintiff sent a request to Warden Chapdelaine to have his medical level reduced to level 2.  On April 7, 2014, defendant Dolan responded to this request and refused to order a level reduction for reasons with which the plaintiff disagreed.  In follow-up communications, defendant Dolan acknowledged that the plaintiff did not require a climate controlled facility but declined to become involved in custody placement issues.  After repeated requests, defendant Dolan reconsidered her medical classification decision and stated that the plaintiff's medical level could be reduced to 2, subject to increase in the future depending on the level of medical care the plaintiff required. Although defendant Dolan noted in the plaintiff's medical file on May 22, 2014, that she would lower the plaintiff's medical level to 2, documents from August 2014 indicate that his level again was 3.

In April and May 2014, the plaintiff encountered difficulty obtaining gloves. His gloves were confiscated during a March 2014 cell search and were held in

6

defendant Lightner's office.  Custody staff informed him that the gloves were issued by the medical department, but defendant Dolan told the plaintiff to request the gloves from custody staff.

In June 2014, defendant Dolan disagreed with the plaintiff's request for a correctional facility without climate control.   In August 2014, the plaintiff asked defendant Dolan to categorize Raynaud's Phenomenon as a disability.  Defendant Dolan refused, stating that she was not authorized to make that determination. Also in June 2014, the plaintiff sent his counselor a request for a reasonable accommodation.  The request was not processed in accordance with the two-day time period specified in the directives, and the response was not provided by the correct person.

On June 30, 2014, the plaintiff contacted defendant Lightner regarding a request for gloves that he had submitted to Lightner and defendant Warden Chapdelaine in March.  Defendant Lightner noted that the order for gloves had been renewed in May but did not provide him with any gloves.  In July 2014, defendant Lightner failed to respond to a request regarding transfer to a facility without air conditioning.  The plaintiff sent this same request to several persons. Defendants Dolan and Warden Chapdelaine responded to the request.  The plaintiff filed multiple requests regarding these concerns in July and August 2014 and sent those requests to multiple persons.

On July 25, 2014, the plaintiff wrote to defendant Captain Hall to remind her that the prior practice was for him to be transferred to a court date one-on-one

7

because of the medical order that flexible cuffs be used.  In response, defendant Hall stated that there was no special transfer list.

On August 4, 2014, the plaintiff attempted to address concerns about hot water in his cell directly to Warden Chapdelaine.  He was instructed to use the chain of command. The following day, the plaintiff communicated his concerns regarding the lack of insulated footwear and gloves.

On August 8, 2014, the plaintiff was transferred to Willard Cybulski Correctional Institution.  The nurse completed an ADA intake form and issued the plaintiff an extra blanket.  Although the nurse requested a medical appointment, the doctor visit did not immediately occur.  On August 17, 2014, the plaintiff submitted a sick call request seeking a doctor visit and stating that the air conditioning was causing him to experience pain.  The plaintiff saw the medical supervisor, defendant Wollenhaup, the following day.  The plaintiff explained that his extra blanket had been confiscated.  Wollenhaup took the plaintiff's pass for the extra blanket and told the plaintiff that no extra blankets were issued at the facility.

The plaintiff filed a medical grievance complaining about Wollenhaup's demeanor, and Wollenhaup reviewed and denied the grievance.  She returned the plaintiff's extra blanket after the plaintiff's family contacted the commissioner's office.  On August 25, 2014, the plaintiff sought a transfer to a level 2 facility without air conditioning.  The plaintiff was informed that he again was classified as medical level 3.  Defendant Wollenhaup responded to the

plaintiff's grievance and reduced his medical level to 2.  Before doing so, she cautioned him that his medical needs required confinement in a facility that was staffed at all times, and that this level of coverage was not available in a medical level 2 facility.

In September 2014, the plaintiff and defendant Dr. Clements disagreed about the treatment for Raynaud's Phenomenon.  During the course of medical visits for the prescribed treatment, defendant Wollenhauph improperly charged the plaintiff a sick call fee for a follow-up visit.

On September 16, 2014, the plaintiff wrote to defendant Warden Tarascio expressing difficulty contacting the ADA coordinator.  Defendant Tarascio responded with the coordinator's name.  The following day, the plaintiff wrote to defendant Tarascio, stating that the mittens defendant Wollenhauph had provided him were in gang colors and that staff was harassing him to wear the mittens at all times.  Later that day, the plaintiff met with defendants Tarascio and Wollenhauph to discuss his condition.  The plaintiff requested medical footwear that had been prescribed.  Defendant Tarascio referred the matter to defendant Wollenhauph, who denied the request.

On September 19, 2014, the plaintiff was placed in metal handcuffs and leg restraints with a tether chain and black box for a court trip.  The plaintiff told custody staff that he had a medical order for soft restraints.  Defendant Wollenhauph stated that the plaintiff had no such order and noted in the plaintiff's medical record that the order applied only in cold weather.  She noted that she

9

had examined the plaintiff's extremities and found no problems and indicated the outside temperature.  The plaintiff states the he was required to remain in the restraints in a cold damp courthouse basement and experienced pain as a result of defendant Wollenhauph's actions.

In November 2014, the plaintiff filed a grievance regarding Warden Chapdelaine's failure to respond to his request submitted the previous month while the plaintiff was held in restrictive housing.  Warden Chapdelaine denied receiving the requests.  Defendant Quiros denied the appeal of the grievance.

On December 10, 2014, the plaintiff saw Dr. Fedus for complaints of severe foot pain and inability to sit at his desk or stand on cold concrete floors for any length of time.  The plaintiff worried that without proper medical care he would lose circulation in his feet and experience severe pain.  Dr. Fedus told the plaintiff that he had been instructed to tell the plaintiff to wear three pairs of socks for outdoor recreation and to stay outside for only twenty minutes.  Dr. Fedus had been treating the plaintiff since 2011, and on April 5, 2013, the plaintiff learned that Dr. Fedus had entered an order in the computer system denying the plaintiff insulated footwear even though Dr. Fedus had previously arranged for the plaintiff to be seen by a rheumatologist, and the rheumatologist had ordered insulated footwear to address the plaintiff's condition.

## II.   Discussion

The plaintiff describes his legal claims as follows:  defendant Starkowski failed to protect his rights; defendant Francis retaliated against the plaintiff by

answering an administrative remedy and denying him a right to appeal; defendant Farinella retaliated against the plaintiff by discontinuing a medical order without evaluating the plaintiff; defendant Pillai denied the plaintiff basis medical care; defendants Dolan and Lightner denied the plaintiff medical care, denied his right to appeal the denials of medical care and retaliated against the plaintiff by responding to an administrative remedy; defendant Burns denied the plaintiff his right to appeal and retaliated against him by responding to a grievance; defendant Granahan denied the plaintiff the right to utilize ADA forms and have his ADA rights explained to him; defendant Fedus failed to comply with a medical order from a specialist; defendant Wollenhauph denied the plaintiff basic medical care and retaliated against him by responding to a grievance; defendant Clements denied the plaintiff medical care and ignored medical orders; defendant Turner denied the plaintiff gloves issued by the medical unit; defendant Peters denied the plaintiff use of the medically-issued gloves; defendant McCreary denied the plaintiff access to a program recommended for his parole eligibility; defendant Alxander used excessive force against the plaintiff; defendant Barone failed to respond to the plaintiff's request for medical treatment; defendant Hall lacked knowledge of ADA requirements and conspired with defendant Lightner to forge ADA forms; defendant Chapdelaine failed to acknowledge the plaintiff's requests for medical care; defendant Tarascio denied the plaintiff medical care and had him handcuffed and shackled with a tether chain and black box when he was aware of the medical order that only soft restraints be used; and defendant

Murphy failed to help the plaintiff obtain medical treatment, conspired to cover-up a transfer for harassment purposes and failed to forward a medical grievance to the proper correctional facility.

### A.   Attorney Starkowski

Attorney Starkowski is a private attorney who provides legal assistance to Connecticut inmates through the Inmates' Legal Assistance Program.  To state a section 1983 claim, the plaintiff must allege that his constitutional or federally protected rights were violated by a person acting under color of state law.  A person acts under color of state law when he exercises "some right or privilege created by the State … or by a person with whom the State is responsible," and is "a person who fairly may be said to be a state actor."  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1988).

Private attorneys do not act under color of state law and are not state actors merely because they possess a state-issued license to practice law.  See Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Any assistance provided by Attorney Starkowski would be adverse to the State's interest in the action. Attorney Starkowski is not a state actor and cannot be sued under section 1983. All claims against Attorney Starkowski are dismissed pursuant to 28 U.S.C. § 1915A.

### B.   District Administrator Quiros

In the lengthy statement of facts, the plaintiff merely alleges that defendant Quiros decided the appeal of a December 2014 grievance against

defendant Warden Chapdelaine.  In the grievance, the plaintiff complained that defendant Chapdelaine ignored his grievance regarding medical care.  Defendant Quiros noted that there was no evidence to support a claim of negligence against defendant Chapdelaine and reminded the plaintiff that he previously had been advised to address his medical concerns to the medical department.  The court cannot discern any constitutionally protected right that was violated by this response.  Accordingly, all claims against defendant Quiros are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      **C.**      **Defendants UConn Health and the Connecticut Department of Corrections**

As discussed below, Plaintiff states only Eighth Amendment deliberate indifference claims.  Accordingly, all claims against Defendants UConn Health and the Connecticut Department of Corrections must be dismissed in their entirely, pursuant to 28 U.S.C. § 1915A(b)(1), because neither entity is "a 'person' within the meaning of § 1983."  Martin v. UConn Health Care, No. 3:99-cv-2158 (DJS), 2000 WL 303262, at *1 (D. Conn. Feb. 9, 2000) (dismissing claims against UConn Health Care and Correctional Management); Torrence v. Pelkey, 164 F. Supp. 2d 264, 271 (D. Conn. 2001) (dismissing claims against State of Connecticut Department of Corrections).[1]

---

[1] The Court construes named defendant Connecticut Managed Health Care Providers, as UConn Health Care and Correctional Management, since the plaintiff describes the named defendant as "a division of University of Connecticut Health Center . . . working under contract with the DOC at MWCI."

**D.** **Prior Federal Action**

In 2014, the plaintiff filed a federal civil rights action concerning some of these same issues.  See <u>Siminausky v. Sean</u>, No. 3:14-cv-243(VLB).  In that case, the plaintiff alleged facts concerning his treatment at Osborn Correctional Institution.  The allegations in this complaint concerning defendant Granahan, identified as Nurse John Doe #1 in plaintiff's earlier complaint, his claims regarding his refusal to accept a transfer to a climate-controlled facility in August 2013, and his claims alleging  excessive force by defendant Alexander, identified in the prior complaint as John Doe #2, were all pled in the prior complaint.

A district court may stay or dismiss a suit that is duplicative of another federal suit as part of its general power to administer its docket.  <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 138 (2d Cir. 2000).   A party has no right to maintain two lawsuits against the same parties in the same court at the same time.  <u>Id.</u> at 139.  This prohibition may also be applied to claims that duplicate claims in pending cases.  See <u>Ziemba v. Clark</u>, 167 F. App'x 831, 832 (2d Cir. 2006) (affirming dismissal under the prior pending action doctrine of claims that duplicated claims in an earlier case filed by the plaintiff).  Accordingly, all claims relating to the plaintiff's treatment at Osborn Correctional Institution are dismissed pursuant to 28 U.S.C. § 1915A.

---

[Dkt. #1, Compl. at ¶ 5].

D.    <u>ADA and RA Claims</u>

The plaintiff contends that all of the defendants violated his rights under the ADA and RA by failing to ensure that he was provided insulated footwear, thermal socks and gloves, received prompt medical attention and was not transferred to a climate-controlled facility.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the Services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.  Similarly, the RA prohibits discrimination "solely by reason of her or his disability."  29 U.S.C. § 794(a).  The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(2)(A).  It also provides a non-exhaustive list of major life activities, including "eating, sleeping, . . . concentrating, thinking, communicating, and working."  <u>Id.</u>  In addition, the degree of impairment must be significant enough to substantially limit that activity.  <u>Id.</u>  When analyzing these claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities."  <u>Troeger v. Ellenville Cent. Sch. Dist.</u>, 523 F. App'x 848, 852 (2d Cir. 2013) (citation and quotation marks omitted).

The plaintiff identifies his disabling impairment as Raynaud's Phenomenon.  However, in support of his claim that this condition substantially impacted a major life activity, he offers only the bare assertion that he "could not

15

sleep, stand on the cold concrete floor, [] sit at a desk to eat or recreate outdoors because of his disability."  [Dkt. #1, Compl. at ¶ 147].   While these allegations touch upon activities listed in the statute as major life activities, the plaintiff does not allege any "facts regarding the manner or duration of his alleged conditions to indicate that they restrict any major life activity to the extent required under the ADA."  <u>Ray v. Weit</u>, No. 13-cv-6416 (RRM) (CLP), 2015 WL 1299198, at *6 (E.D.N.Y. Mar. 20, 2015) (dismissing <u>pro se</u> claim under the ADA).   Therefore, he fails to state a plausible ADA or RA claim.  In addition, the court notes that there are no reported cases finding a person who suffers only from Raynaud's Phenomenon disabled, and other cases considering this condition have concluded that the plaintiff was unable to show the required substantial limitation of major life activities.  <u>See, e.g.</u>, <u>Loberg v. Gordon Flesch Co., Inc.</u>, 308 F. Supp. 2d 890, 892 (N.D. Ill. 2004) (Raynaud's Phenomenon did not qualify as a disability under the ADA because plaintiff failed to show that condition substantially limited any major life activities).  Because the plaintiff has failed to allege facts showing that he suffers from a disability within the meaning of the ADA, his ADA and RA claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

     E.    <u>Equal Protection Claim</u>

The plaintiff generally asserts a claim for violation of his right to equal protection of the laws.  The Equal Protection Clause protects prisoners from invidious discrimination.  It does not mandate identical treatment for each individual.  Rather, it requires that similarly situated persons be treated the same.

16

See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985).  To state an equal protection claim, the plaintiff must allege facts showing that he was treated differently from other similarly situated individuals and the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted). Although the plaintiff characterizes all of his claims as violating his right to equal protection, he has not alleged facts showing that he was treated differently from similarly situated inmates or that his treatment was based on impermissible considerations.

The plaintiff also can assert an equal protection claim on a "class of one" theory.  To state a valid equal protection "class of one" claim, the plaintiff must allege, first, that he has been intentionally treated differently from others similarly situated and, second, that there is no rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The plaintiff must allege an "extremely high" level of similarity with the person to whom he is comparing himself.  Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).  The plaintiff's circumstances and the other person's must be "prima facie identical." Id. at 105.  The plaintiff has identified no other inmate who was treated differently under similar circumstances.  Thus, he fails to state an equal protection class of one claim.  See Page v. Lantz, No. 3:03-cv-1271 (MRK), 2007 WL 1834519, at *6 (D.

17

Conn. June 25, 2007) (holding that class of one equal protection claim fails as a matter of law where plaintiff did not allege that similarly situated inmates were treated differently under similar circumstances).  The plaintiff's equal protection claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      F.    <u>First Amendment Retaliation Claim</u>

      The plaintiff generally alleges that defendants Francis, Farinella, Dolan, Lightner, Burns and Wollenhauph violated his First Amendment right to be free from retaliatory conduct.  Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a retaliation claim, the plaintiff must show that his actions were protected by the Constitution or federal law and that his protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct.  <u>Friedl v. City of New York</u>, 210 F.3d 79, 85 (2000).  Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  <u>See</u> <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983).  To support a claim of retaliation, the allegedly retaliatory conduct must deter a similarly situated inmate of ordinary resolve from exercising his constitutional rights.  <u>See</u> <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 381 (2d Cir. 2004).  Lesser conduct is considered <u>de</u> <u>minimis</u> and will not support a retaliation claim.

      The plaintiff alleges only that defendant Francis responded in what the plaintiff considers an improper manner to one grievance and failed to respond to another.  He alleges that Dr. Farinella altered a medical order without examining

him.  The plaintiff was not satisfied with the manner in which defendants Dolan, Lightner, Burns and Wollenhauph responded to his medical requests.  He alleges no facts showing that their actions were taken in response to complaints or grievances he filed.  Absent such facts, the plaintiff fails to state a cognizable retaliation claim.  The retaliation claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

       G.    <u>Eighth Amendment Claims</u>

Liberally construing the Complaint and accompanying exhibits in a light most favorable to the plaintiff, the Complaint appears to raise a series of Eighth Amendment claims against the following defendants: Francis, Farinella, Pillai, Dolan, Lightner, Burns, Fedus, Wollenhauph, Clements, Turner, Peters, Barone, Hall, Chapdelaine, Tarascio, and Murphy.  The Court notes that all of these claims arise out of the failure of the Connecticut Department of Corrections to accommodate the plaintiff's acknowledged, diagnosed, medical condition, Raynaud's Phenomenon, that these alleged failures occurred in four different facilities, over a three year period, and involve numerous individuals.  This suggests the possibility that claims have been improperly joined, and that the Defendants may properly move to sever some of these claims into different cases.

## ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

(1)     All claims against defendants Starkowski, Quiros, Granahan, McCreary, and Alexander, all claims for violation of the ADA and RA, denial of equal protection and retaliation, and all claims arising from the plaintiff's confinement at Osborn Correctional Institution are DISMISSED pursuant to 28 U.S.C. § 1915A.

(2)     The Clerk shall verify the current work address of defendants Francis, Farinella, Pillai, Dolan, Lightner, Burns, Fedus, Wollenhaugh, Clements, Turner, Peters, Barone, Hall, Chapdelaine, Tarascio, and Murphy with the Department of Correction Office of Legal Affairs, and mail waiver of service of process request packets to them at the confirmed addresses within twenty-one (21) days of this Order.  The Clerk shall report to the court on the status of that waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on that defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the complaint on defendants Francis, Farinella, Pillai, Dolan, Lightner, Burns, Fedus, Wollenhaugh, Clements, Turner, Peters, Barone, Hall, Chapdelaine, Tarascio, and Murphy in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days

20

from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4)     The Clerk shall send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(5)     The Clerk shall send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are mailed.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(7)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

(8)     All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(9)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)    If the plaintiff changes his address at any time during the litigation of

21

this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, indicate the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

SO ORDERED this 20th day of January 2016, at Hartford, Connecticut.

_____/s/_____
Vanessa L. Bryant
United States District Judge